**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

ARTHUR E. DAILEY,          )     CASE NO. 1:13-CV-01755
                                )
         Plaintiff,       )
                                )     MAGISTRATE JUDGE
         v.            )     VECCHIARELLI
                                )
CAROLYN W. COLVIN,       )
  Acting Commissioner of Social   )
  Security,               )     **MEMORANDUM OPINION AND**
                                )     **ORDER**
         Defendant.

Plaintiff, Arthur Dailey ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying his application for Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423.  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I.  PROCEDURAL HISTORY

On April 4, 2012, Plaintiff filed his application for POD and DIB and alleged a disability onset date of March 23, 2012.  (Transcript ("Tr.") 10.)  The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id.*)  On June 5, 2013, an ALJ held Plaintiff's hearing. (*Id.*)  Plaintiff participated in the hearing, was represented by counsel, and testified. (*Id.*)  A vocational expert ("VE") also participated and testified.  (*Id.*)  On June 13, 2013, the ALJ found Plaintiff not disabled.  (Tr. 7.)  On July 22, 2013, the Appeals Council

declined to review the ALJ's decision, making it the Commissioner's final decision.  (Tr. 1.)

On August 12, 2013, Plaintiff filed his complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 10, 11.)

Plaintiff asserts the following assignments of error: (1) The ALJ erred in evaluating the opinions of Plaintiff's treating physicians; (2) the ALJ erred in assigning great weight to the opinions of non-examining state agency physicians; and (3) the ALJ's residual functional capacity (RFC) determination is not supported by substantial evidence.

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Plaintiff was born in February 1964 and was 48-years-old on the alleged disability onset date.  (Tr. 16.)  He had a limited education and was able to communicate in English.  (Tr. 17.)  He had past relevant work as a furnace operator and foundry worker.  (Tr. 16.)

### B.    Medical Evidence

#### 1.    Medical Reports

##### a.    Multiple Sclerosis

Plaintiff was diagnosed with multiple sclerosis in 2000.  (Tr. 15.)  An MRI of Plaintiff's brain from May 31, 2012, showed stable white matter changes and no new lesions.  (Tr. 1015, 1045.)  On June 27, 2012, Plaintiff saw Darshan Mahajan, M.D.,

2

with complaints of increased tingling and burning on his right side, arm, and leg, as well as neck pain.  (Tr. 1015.)  Plaintiff also complained of "feeling somewhat jittery inside." (*Id.*)  Dr. Mahajan listed Plaintiff's active diagnoses as dizziness and giddiness; unspecified essential hypertension; type II or unspecified type diabetes mellitus without mention of complication, not stated as uncontrolled; and multiple sclerosis.  (Tr. 1016.) On examination, Plaintiff's strength was well maintained, his balance was good, and he was ambulating well.  (Tr. 1017.)  Treatment records show that Plaintiff has done relatively well with his multiple sclerosis but has experienced some exacerbations over the years which affect the right side of his body.  (Tr. 277-308, 341-372, 390-392, 394-396, 463-466, 468-471, 985-988, 1015-1018, 1032-1046, 1199-1207, 1209-1212, 1251-1254, 1310-1365, 1467-1470.)

From January 31, 2012, to at least October 22, 2012, Bharat C. Shah, M.D., often observed that Plaintiff had normal strength, sensation, and/or reflexes in his arms and legs.  (Tr. 867, 869-870, 1258, 1260-1261, 1264, 1267, 1270.)  On April 26, 2013, Dr. Mahajan observed that Plaintiff was "ambulating better now" and was using a cane to stabilize himself.  (Tr. 1470.)  On examination, Plaintiff's strength was well-maintained and his balance was good.  (Tr. 1469.)  At a May 20, 2013, examination, Plaintiff displayed a normal gait and station.  (Tr. 1444.)

### b.  Back and Neck

Records from Dr. Shah note that Plaintiff received treatment for cervicalgia, lumbago, and sacroiliitis.  Plaintiff underwent a lumbar spine x-ray on February 4, 2012, which showed mild multi-level discogenic degenerative changes.  (Tr. 1379.)  An x-ray of Plaintiff's cervical spine from June 20, 2012, showed right C3-4 neuroforaminal

3

compromise from facet arthropathy.  (Tr. 1013.)  Plaintiff's cervical vertebral bodies remained normally aligned and preserved in height.  (*Id.*)  His disc space heights were also maintained.  (Tr. 1013.)  Furthermore, MRIs of the thoracic and lumbar spines performed on April 8, 2012, were normal, and an MRI of the cervical spine performed on August 21, 2012, was unremarkable.  (Tr. 842, 1204-1205.)  As noted previously, from January 31, 2012, to at least October 22, 2012, physical examinations have noted normal muscle strength, normal sensation, and normal reflexes.  (Tr. 277-308, 341-372, 390-392, 394-396, 463-466, 468-471, 985-988, 1015-1018, 1032-1046, 1199-1207, 1209-1212, 1251-1254, 1310-1365, 1467-1470.)

### c. Coronary Artery Disease

Plaintiff has been diagnosed with coronary artery disease.  (Tr. 1015.)  In April 2008, physicians implanted a drug-eluting stent in Plaintiff's circumflex artery due to a myocardial infarction.  (Tr. 374, 382, 390, 394, 398-399, 402, 522.)  After complaining of angina, Plaintiff underwent a cardiac catheterization on February 24, 2012, which showed two-vessel non-obstructive coronary disease with good ventricular function. (Tr. 484.)  From May 7 to May 9, 2013, Plaintiff sought treatment at EMH Healthcare after sustaining a non-ST elevated myocardial infarction.  (Tr. 1427-1434.)  He underwent another catheterization.  (Tr. 1433.)  Following this procedure, Plaintiff maintained an ejection fraction of 55% with moderate ventricular hypertrophy.  (*Id.*) Two weeks later, Plaintiff reported that he was doing well and no longer had chest pain or shortness of breath.  (Tr. 1451.)

4

### d. Sleep Apnea

Plaintiff underwent a sleep study on December 14, 2012, which demonstrated moderate sleep apnea.  (Tr. 1350-1351.)  Plaintiff was prescribed a CPAP mask, which he reported helped him to feel more awake in the daytime.  (Tr. 1442.)

### e. Carpal Tunnel Syndrome

In May 2012, an electromyogram ("EMG") test was conducted in response to Plaintiff's complaints of numbness in his hands.  (Tr. 913.)  The EMG showed moderate bilateral median nerve compression neuropathy at the wrist consistent with a diagnosis of moderate bilateral carpal tunnel syndrome.  (*Id.*)  On June 8, 2012, Plaintiff underwent right median nerve decompression surgery.  (Tr. 999-1000.)  On December 5, 2012, he underwent left median nerve decompression surgery.  (Tr. 1464-1465.)  A month after surgery, Mario M. Sertich, M.D., noted that Plaintiff's incision "healed beautifully," and Plaintiff indicated that he had no significant pain and was very happy with his results.  (Tr. 1457.)

### f. Medical Source Statements and Opinions

On August 29, 2012, Dr. Mahajan opined that Plaintiff "cannot return to his job. He needs to apply for Disability."  (Tr. 1212.)  Dr. Mahajan added, "[w]e shall see how he does in the next five to six months.  I asked him to try to build up his endurance." (*Id.*)  He gave Plaintiff a return to work date of January 3, 2013.  (*Id.*)

On April 4, 2013, a physical therapist at Mercy Medical Center completed a Functional Capacities Evaluation, which Dr. Shah signed.  (Tr. 1397-1400.)  The evaluation recorded significantly decreased grip and pinch strength bilaterally and

5

decreased coordination in the upper extremities.  (Tr. 1445-1446.) According to the report, Plaintiff could lift five pounds occasionally and had decreased coordination/dexterity and grip/pinch strength.  (Tr. 1398-1399.)  The report further indicated that Plaintiff could stand for two hours in an eight-hour workday and sit for two hours in an eight-hour workday.  (Tr. 1400.)

### 2. Agency Reports

On September 24, 2012, Leon D. Hughes, M.D., a state agency physician, completed a residual functional capacity (RFC) assessment.  (Tr. 88-89.)  After reviewing the record evidence, Dr. Hughes opined that Plaintiff could perform light work that involved occasional pushing/pulling with the right leg; no climbing of ladders, ropes, or scaffolds; frequent climbing of ramps and stairs; unlimited balancing; occasional stooping, crouching, and crawling; frequent kneeling; and no concentrated exposure to hazards.  (Tr. 88-89.)  On November 29, 2012, Malika Haque, M.D., another state agency physician, affirmed Dr. Hughes' findings, but further limited Plaintiff to work avoiding all exposure to hazards.  (Tr. 108-109.)

## C. Hearing Testimony

### 1. Plaintiff's Hearing Testimony

Plaintiff worked as a furnace operator and/or metal clean-up worker until 2012. (Tr. 32, 54.)  He testified that in 2012, he visited his employer's doctor, who informed him that he could no longer work for the company due to his multiple sclerosis and angina.  (Tr. 32-35.)

Plaintiff was diagnosed with multiple sclerosis, which was treated with steroids

but still caused burning and numbness on the right side of his body.  (Tr. 83-84.)  He also had difficulty digesting food and experienced frequent nausea.  (Tr. 84.)  Plaintiff had sleep apnea, for which he was prescribed a CPAP machine.  (Tr. 41.)  He testified that the machine has helped him.  (*Id.*)  At the time of his hearing, Plaintiff was on about 26 or 27 medications.  (Tr. 39.)  His wife helped him to remember when to take his medications.  (Tr. 42.)  He also experienced vertigo, which caused him to feel dizzy and nauseous.  (Tr. 49.)  Plaintiff had frequent urinary tract infections and was expected to have to self-catheterize if his antibiotics became ineffective.  (Tr. 96-97.)

Plaintiff lived in a house with his wife and mentally challenged son.  (Tr. 44.) Plaintiff made sure his son took his pills, used the restroom properly, and ate lunch. (Tr. 46.)  At home, Plaintiff tried to keep his house clean by sweeping and doing dishes. (Tr. 47.)  He could mow part of his one acre lawn with a tractor before having to stop due to back pain.  (Tr. 48.) He socialized with others by sitting around a fire pit in his driveway.  (Tr. 48-49.)  Plaintiff testified that he could probably stand for about a half hour at a time and sit for about 45-50 minutes before having to stand up and walk around.  (Tr. 46.)

### 2.    Vocational Expert's Hearing Testimony

Thomas Heiman, a vocational expert, testified at Plaintiff's hearing.  The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and work history who was right-handed and had an eleventh grade education.  (Tr. 54.)  The individual could engage in light exertion work and could occasionally push/pull with the right, lower extremity; could never climb ladders, ropes, or scaffolds; could occasionally stoop; could frequently climb stairs and ramps; was unlimited in balancing; could

frequently kneel; and could occasionally crouch and crawl.  (Tr. 54-55.)  The VE testified that the hypothetical individual could perform work as a cashier II, photocopying machine operator; and a small products assembler.  (Tr. 55-56.)

The ALJ asked the VE to assume a second hypothetical individual with the same limitations as described previously except that the individual could perform work at the sedentary exertion level rather than at the light level.  (Tr. 56.)  The ALJ testified that the individual could perform such jobs as a document scanner or document preparer, a final assembler, and a food and beverage order clerk.  (Tr. 57.)

The ALJ asked the VE whether his opinion would change with regard to the two aforementioned hypothetical questions if the individual used a cane for ambulating. (Tr. 58.)  The VE testified that he would eliminate the jobs mentioned in the light category and the final assembler and food and beverage order clerk jobs.  (*Id.*)

## III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524 (6th Cir. 1981)*.  A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott*

8

*v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV.   SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2.    The claimant has not engaged in substantial gainful activity since March 23, 2012, the alleged onset date.

3.    The claimant has the following severe impairments: multiple sclerosis, coronary artery disease, degenerative disc disease of the cervical

and lumbar spines, and obesity.

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work with occasional push/pull with the right lower extremity, never climbing ladders, ropes, or scaffolds, frequent climbing of stairs and ramps, unlimited balancing, frequent kneeling, occasional stooping, crouching, crawling, and must avoid all exposure to hazards.

6.  The claimant is unable to perform any past relevant work.

7.  The claimant was born in February 1964 and was 48-years-old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.  The claimant has a limited education and is able to communicate in English.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 23, 2012, through the date of this decision.

(Tr. 12-18.)

## V.   LAW & ANALYSIS

### A.   Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether

the Commissioner's decision is supported by substantial evidence and was made

10

pursuant to proper legal standards.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ.  *Id.*  However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

**B.      Plaintiff's Assignments of Error**

**1.      The ALJ Erred in Evaluating the Opinions of Plaintiff's Treating Physicians.**

Plaintiff argues that the ALJ erred by failing to give controlling weight to the opinions of two of Plaintiff's treating physicians, Drs. Mahajan and Shah.  "An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques'

11

and 'not inconsistent with the other substantial evidence in the case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted).  If an ALJ decides to give a treating source's opinion less than controlling weight, she must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight.  *See Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)).  This "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is to "let claimants understand the disposition of their cases" and to allow for "meaningful review" of the ALJ's decision, *Wilson,* 378 F.3d at 544 (internal quotation marks omitted).  Where an ALJ fails to explain her reasons for assigning a treating physician's opinion less than controlling weight, the error is not harmless and the appropriate remedy is remand.  *Id.*

### a.  Dr. Mahajan

Dr. Mahajan did not provide a report regarding Plaintiff's RFC.  On August 29, 2012, however, Dr. Mahajan opined that Plaintiff "cannot return to his job.  He needs to apply for Disability."  (Tr. 1212.)  Dr. Mahajan added, "[w]e shall see how he does in the next five to six months.  I asked him to try to build up his endurance."  (*Id.*)  He gave Plaintiff a return to work date of January 3, 2013.  (*Id.*)  Plaintiff maintains that the ALJ erred by failing to acknowledged Dr. Mahajan's statement in her hearing decision, arguing that "[t]he ALJ is not free to simply ignore the opinion of a treating physician and must articulate good reasons when she fails to accord the opinion substantial

weight."  (Plaintiff's Brief ("Pl.'s Br.") 12.)

The ALJ did not err in failing to acknowledge or assign weight to Dr. Mahajan's statement that Plaintiff could not return to his job until January 3, 2012, as Dr. Mahajan's opinion is not an opinion of a medical condition, but rather is an opinion of disability that is reserved for the ALJ.  It is well established that certain issues are reserved to the Commissioner for determination.  *See* 20 C.F.R. § 416.927(d).  Among these are whether a claimant is disabled.  *See* 20 C.F.R. § 416.927(d)(1) ("We are responsible for making the determination or decision whether you meet the statutory definition of disability. . . .  A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").  To give controlling weight to a physician's statements that a claimant is disabled or unable to work "would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled."  SSR 96-5P (S.S.A July 2, 1996).  Accordingly, the ALJ did not err in giving less than controlling weight to Dr. Mahajan's opinion that Plaintiff is unable to work, as the ALJ was not required to defer to Dr. Mahajan's opinion on that subject.

### b.  Dr. Shah

On April 4, 2013, Dr. Shah, through a physical therapist, opined that Plaintiff: had decreased coordination/dexterity and grip/pinch strength; could lift five pounds occasionally; could stand for a total of two hours in an eight-hour workday; and could sit for a total of two hours in an eight-hour workday.  (Tr. 1397-1400.)  Dr. Shah concluded

13

that Plaintiff was unable to work.  (Tr. 1400.)

The ALJ assigned little weight to Dr. Shah's opinion, finding that the assessment was not supported by the objective evidence "including Dr. Shah's own patient notes which indicate normal reflexes, normal sensation, and normal muscle strength."  (Tr. 16.)  If this were all the ALJ had said about the evidence, the case would require remand.[1]  In this case, however, the ALJ's opinion, taken as a whole, thoroughly evaluates the evidence and indicates the weight the ALJ gave it.  This provides a sufficient basis for the ALJ's rejection of Dr. Shah's opinion, *see Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-71 (6th Cir. 2006), and affords this Court the opportunity to meaningfully review the ALJ's opinion.   In *Nelson*, the ALJ failed to discuss the opinions of two of the plaintiff's treating physicians, and the plaintiff argued that this failure constituted a basis for remand.  The Sixth Circuit disagreed, concluding that "the ALJ's evaluation of [the plaintiff's] mental impairments indirectly attacks both the supportability of [the treating physicians'] opinions and the consistency of those opinions with the rest of the record evidence."  195 F. App'x at 470.  Because the ALJ's discussion of the other evidence "implicitly provided sufficient reasons for not giving . . . controlling weight" to the treating physicians, the Sixth Circuit concluded that the ALJ's

---

[1]     There is case law supporting the general proposition that an ALJ's broad statement rejecting a treating physician's opinion without giving specific reasons for rejecting it requires remand.  *See Wilson,* 378 F.3d at 545 (finding that the ALJ's "summary dismissal" of the opinion of the claimant's treating physician failed to satisfy the "good reasons" requirement); *Friend v. Comm'r of Soc. Sec.,* 375 F. App'x 543, 552 (6th Cir. 2010) ("Put simply, it is not enough to dismiss the treating physician's opinion as incompatible with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick.").

decision satisfied the purposes of the controlling physician rule.  *Id.* at 472.

In this case, the ALJ provided a lengthy discussion of the medical evidence before evaluating the opinions of the treating physicians and the other medical opinions contained in Plaintiff's record.  (Tr. 12-16.)  The ALJ's discussion of the medical evidence was not merely a rote recitation of Plaintiff's longitudinal history; rather, the ALJ analyzed the medical evidence and explained how it supported her ultimate RFC determination.  (*Id.*)  For example, the ALJ discussed the following evidence, which implicitly rejects Dr. Shah's opinion regarding Plaintiff's physical limitations:

- Plaintiff underwent left median nerve decompression surgery on December 5, 2012, and subsequent patient notes indicate that he was happy with the results.  (Tr. 12.)

- The evidence shows that Plaintiff has been prescribed a CPAP machine for his sleep apnea, which has helped him to stay more awake during the daytime.  (Tr. 13.)

- Plaintiff testified that his wife works full-time and that he has to take care of his mentally challenged son while his wife is gone.  (Tr. 14.)  He also stated that he tries to keep the house clean and does the dishes. (*Id.*)

- The ALJ noted that Plaintiff's multiple sclerosis has been described as "relapsing and remitting multiple sclerosis."  (Tr. 15.)  She also noted that an MRI of Plaintiff's brain from May 31, 2012, showed that the white matter changes in the left frontal lobe were stable.  (*Id.*)  With regard to Plaintiff's treatment for multiple sclerosis, the ALJ stated: "Records from B. Shah, M.D., note that the claimant has normal strength, normal sensation and normal reflexes.  (Exhibits 21F, 37F). A patient note dated April 26, 2013 from Dr. Mahajan notes that the claimant's strength is well maintained.  His balance good and he was ambulating well.  Nevertheless, he was using a cane.  (Exhibit 52F, p.4).  A physical examination dated May 20, 2013 also noted that gait and station are normal.  (Exhibit 49F, p.4)."  (*Id.*)

- The ALJ noted that MRI's of Plaintiff's thoracic and lumbar spines performed on April 8, 2012, were normal and an MRI of the cervical spine from August 21, 2012, was unremarkable.  (Tr. 15.)  Plaintiff has

15

done relatively well with his multiple sclerosis and physical examinations have noted normal muscle strength, normal sensation, and normal reflexes.  (*Id.*)

• According to the ALJ, Plaintiff's physical examinations which note normal sensation, normal reflexes, and normal muscle strength, as well as Plaintiff's lumbar spine x-ray which shows mild degenerative changes and his normal MRI's of the cervical, thoracic, and lumbar spines suggest that his symptoms are not as disabling as he has alleged.  (Tr. 15-16.)  The ALJ further noted that Plaintiff's "testimony regarding his daily activities suggests that he is not disabled by his symptoms.  In addition, the evidence indicates that the claimant was not consistent in his treatment with Dr. Mahajan for his multiple sclerosis for many years which also suggests that he is not as disabled as he has alleged."  (Tr. 16.)

Had the ALJ discussed the aforementioned evidence immediately after stating that she was assigning only limited weight to Dr. Shah's opinion, there would be no question that the ALJ provided "good reasons" for giving Dr. Shah's opinion less than controlling weight.  The fact that the ALJ did not analyze the medical evidence for a second time (or refer to her previous analysis) when rejecting Dr. Shah's opinion does not necessitate remand of Plaintiff's case.  "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."  *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989)).  *See also Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (When "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game.") (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766, n.6 (1969)).  Accordingly, the ALJ did not err with regard to Dr. Shah.

16

## 2.    The ALJ Erred in Assigning Great Weight to the Opinions of Non-Examining Physicians.

On September 24, 2012, state agency physician Dr. Hughes opined that Plaintiff could perform light work that involved occasional pushing/pulling with the right leg; no climbing of ladders, ropes, or scaffolds; frequent climbing of ramps and stairs; unlimited balancing; occasional stooping, crouching, and crawling; frequent kneeling, and no concentrated exposure to hazards.  (Tr. 88-89.)  On November 29, 2012, Dr. Haque, another state agency physician, affirmed Dr. Hughes' findings, but further limited Plaintiff to work avoiding all exposure to hazards.  (Tr. 108-109.)  The ALJ assigned great weight to the aforementioned opinions, finding that they were consistent with the objective evidence in the record.  (Tr. 16.)

Plaintiff maintains that the ALJ erred in assigning great weight to the opinions of state agency physicians Drs. Hughes and Haque.  According to Plaintiff, the opinions of Drs. Hughes and Haque are not supported by substantial evidence, because the record was not complete at the time they rendered their opinions.  Specifically, Plaintiff argues that the state agency physicians did not consider Dr. Mahajan's August 29, 2012, opinion that Plaintiff could not work, nor did they "have the benefit of the functional capacity assessment, the records from the pulmonologist, or the hospitalization records for April and May 2013 for another multiple sclerosis exacerbation and another heart attack, respectively."[2]  (Pl.'s Br. 16.)  For the following reasons, Plaintiff's argument is

---

[2]    Contrary to this Court's Initial Order (*see* Doc. No. 4), Plaintiff did not provide citations to any of the records in the 1,484-page Administrative Transcript that the state agency physicians allegedly failed to consider. This argument can be dismissed on this ground alone.

without merit.

Plaintiff has provided no legal support for his argument that the ALJ could not properly rely on the opinions of Drs. Hughes and Haque because the record was not complete at the time they rendered their opinions.[3]  Indeed, the only legal theory Plaintiff provides in support of his second assignment of error is the treating physician rule, which states that the opinions of treating sources are entitled to controlling weight unless the ALJ provides "good reasons" for rejecting them.  (Pl.'s Br. 14-15.)  Here, as discussed in detail above, the ALJ adequately explained her rationale for affording little weight to Dr. Shah's April 2013 opinion regarding Plaintiff's physical RFC, and Dr. Mahajan's opinion was entitled to no special deference as it was an opinion of disability that was reserved for the ALJ.  Thus, it is of no consequence that Drs. Hughes and Haque did not have an opportunity to review the treating physicians' opinions prior to

---

[3]  The Sixth Circuit has held on at least two occasions that an ALJ errs when she accords greater weight to state agency physicians over treating sources when the state agency opinions were based on an incomplete case record.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (holding that the ALJ's decision to accord greater weight to state agency physicians over the plaintiff's treating sources was reversible error, because the consultants' opinions were based on an incomplete case record); *Stacey v. Comm'r of Soc. Sec.*, 451 Fed.Appx. 517, 520 (6th Cir. 2011) (remanding in part because the ALJ "gave no indication that he at least considered that the state agency physician had not reviewed all of the evidence in the record before giving his opinion significant weight." (internal quotations omitted)).  This Court, however, has found that *Blakely* and *Stacey* stand on their own facts.  *Curry v. Colvin*, 4:13-CV-00312, 2013 WL 5774028 (N.D. Ohio Oct. 24, 2013) (Vecchiarelli, M.J.). The facts at issue here may or may not be distinguishable from those at issue in *Blakely* and *Stacey*; however, because Plaintiff did not reference *Blakely, Stacey,* or any other case law relevant to his argument that the ALJ could not rely upon the state agency physicians' opinions, the Court declines to engage sua sponte in the complex analysis that this issue requires.

completing their functional capacity evaluations: Dr. Shah, Drs. Hughes and Haque, and the ALJ all consulted Plaintiff's treatment records before assessing his functional limitations.[4]  The ALJ had the responsibility of determining Plaintiff's RFC and considered the opinions of both treating sources and non-examining state agency sources in doing so.  As the ALJ here provided an adequate analysis of the RFC opinion of Dr. Shah and articulated her reasons for assigning less than controlling weight to the opinion, this Court is not faced with the concern that the treating source's opinion was unfairly discounted or ignored altogether.  As a result, this Court is in a position to conclude that the ALJ's heavy reliance on state agency sources is supported by substantial evidence notwithstanding the fact that they did not consider the subsequent RFC opinion from Dr. Shah when rendering their opinions.[5]

### 3. The ALJ's Residual Functional Capacity Determination is not Supported by Substantial Evidence.

Plaintiff argues that, other than the reports from Drs. Hughes and Haque, there is no evidence in the record to support the ALJ's RFC determination.  Specifically, Plaintiff

---

[4]    The RFC opinions of treating sources are often rendered after a claimant's case has been heard and the medical records have been considered.  Thus, to require state agency physicians to have reviewed these opinions would be impractical, unworkable, and inefficient.  To hold that an ALJ errs by relying on the opinion of a state agency physician who did not have an opportunity to review the RFC opinions of treating sources would allow plaintiffs in future cases to routinely obtain RFC assessments from treating sources after the agency experts have reviewed the record in a case, thereby undermining the opinions of the consultative examiners.

[5]    As Plaintiff has not provided transcript citations for the other evidence that Drs. Hughes and Haque "did not have the benefit of" reviewing before rendering their opinions, this Court cannot adequately address whether this additional evidence renders the state agency physician opinions stale.

19

contends that the ALJ failed to account for Plaintiff's difficulty in using his upper extremities as a result of bilateral carpal tunnel syndrome surgeries; his need to use a cane for stability; and his need to take unscheduled naps during the day.  The Commissioner responds that substantial evidence supports the ALJ's RFC determination.  For the following reasons, Plaintiff's argument is without merit.

RFC is an indication of a claimant's work related abilities despite his limitations.  *See* 20 C.F.R. § 416.945(a).  A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner.  *See* 20 C.F.R. § 416.945(e).  As such, the ALJ bears the responsibility for assessing a claimant's RFC based on all of the relevant evidence, 20 C.F.R. § 416.945(a), and must consider all of a claimant's medically determinable impairments, both individually and in combination, S.S.R. 96-8p.

Here, the ALJ considered Plaintiff's record as a whole and concluded that despite his impairments, he had the RFC to perform a range of light work[6] with certain additional limitations.  (Tr. 14.)  Contrary to Plaintiff's assertion, substantial evidence, as discussed by the ALJ in her decision, supports the ALJ's RFC determination:

- With regard to Plaintiff's use of his upper extremities, the ALJ explicitly acknowledged that Plaintiff had moderate bilateral carpal tunnel syndrome.  (Tr. 12.)  She noted that Plaintiff underwent an EMG in May 2012 and right median nerve decompression surgery in June 2012.  (*Id.*) On December 5, 2012, Plaintiff underwent left

---

[6]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R § 404.1567.

median nerve decompression surgery.  (*Id.*)  Treatment notes indicate that Plaintiff was "very happy with his results" (Tr. 12, 1457.)

• The ALJ discussed Plaintiff's sleep study from December 14, 2012, which demonstrated that Plaintiff had moderate sleep apnea.  (Tr. 13.)  The ALJ further explained, however, that the "evidence indicates that he has been prescribed a CPAP which helps and he is more awake in the daytime."  (*Id.*)  Consistent with the ALJ's conclusion, on May 20, 2013, Plaintiff informed Dr. Ramadugu that his CPAP mask helped him feel more awake during the day, and Plaintiff testified at his hearing that his CPAP machine has helped with his sleep apnea.  (Tr. 41, 1442.)

• The ALJ acknowledged that Plaintiff used a cane.  (Tr. 15.)  While Plaintiff maintains that Drs. Gayomali, Shah, and the Cleveland Clinic reported that Plaintiff needed a cane for stability, the transcript page numbers Plaintiff cites to support this assertion make no mention of a cane.  (Pl.'s Br. 18, citing Tr. 1248-1249, 1289, 1360, 1446).  Thus, Plaintiff has provided no evidence that a physician prescribed a cane for Plaintiff's use.  Moreover, the ALJ explained that Dr. Shah routinely found Plaintiff to have normal strength, sensation, and/or reflexes in his arms and legs.  (Tr. 15, 867, 869-870, 1258, 1260-1261, 1264, 1267, 1270.)  In April 2012, MRIs of Plaintiff's thoracic and lumbar spines were normal or unremarkable (Tr. 15, 842.)  An August 2012 MRI of Plaintiff's cervical spine was also unremarkable.  (Tr. 15, 1204-1205.)

Thus, the ALJ properly considered Plaintiff's carpal tunnel syndrome, sleep apnea, and use of a cane, and nonetheless concluded that–based on the medical and opinion evidence of record–he was capable of performing a limited range of light work.  Plaintiff may be correct that evidence in the record supports the conclusion that he is impaired in the use of his upper extremities, that he uses a cane for stability, and that he needs to take unscheduled naps during the day; however, this is not the appropriate standard to apply to the ALJ's decision.  An ALJ's decision that is supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.  For the foregoing reasons, Plaintiff's third

21

assignment of error is without merit.

## VI.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: June 17, 2014

22